Mitchell D. Schweitzer, J.
On January 13, 1964, the respondent, Roselyn Epstein was adjudged guilty of criminal contempt by this court and sentenced to imprisonment for 30 days. The contempt was her refusal, in the presence of the court, to answer questions put to her as a witness before the 4th day of January 1964 Grand Jury, after a direction by the court to do so. This is regarded traditionally as a contempt *988 committed in the presence of the court and such as the sole basis of the adjudication then made.
Respondent’s afore-mentioned refusal to answer questions was predicated on the claim that while the Grand Jury had informed her that she would be accorded immunity from prosecution in accordance with New York law (Penal Law, § 2447), the immunity offered was not coextensive with the jeopardy to which she was exposed since the Grand Jury, a State agency, could not grant her immunity from possible Federal prosecution. This court, on the basis of Knapp v. Schweitzer (357 U. S. 371)* rejected her contention as invalid. Respondent applied to the Appellate Division for a stay of execution of the mandate of commitment. The application was denied on February 25, 1964.
Respondent thereupon appeared before this court on March 10, 1964. Her counsel advised the court that she was prepared to go before the Grand Jury and answer all legal and proper questions. The District Attorney, at the time, stated that he would urge execution of the previously imposed 30-day sentence if the respondent should resort to “ obviously evasive [or] equivocal tactics ’’ before the Grand Jury.
Respondent then appeared before the Grand Jury that same day and again on March 16. She answered all questions asked of her. At no time during those two sessions did the District Attorney seek any rulings from the court relating to any refusal on her part to answer any questions.
Nevertheless, the District Attorney has now moved this court to direct the execution of the original 30-day sentence. He urges that respondent’s answers were so evasive and equivocal and “ inherently preposterous and incredible ” as to “ tax * * * credulity ” and thus constitute such bad faith on her part as to justify a direction that the original judgment be executed.
Respondent has, in turn, made application that she be furnished with a transcript of her Grand Jury testimony to enable her to answer and defend against the District Attorney’s present motion. The District Attorney opposes that application on the ground that there is no warrant for releasing Grand Jury testimony where the matter pertains to the execution of a *989 previously imposed contempt sentence rather than original proceedings to determine charges of contempt. The issue thus squarely presented to the court is whether, in connection with the relief now sought by the District Attorney, the court may proceed summarily or must first require that respondent be served with a notice and specification of the charges said to embrace the contempt, which would in effect call for a disclosure of respondent’s most recent testimony before the Grand Jury.
It is settled that 1 ‘ under certain circumstances a response to a question may be so [inherently] false and evasive as to be equivalent to no answer at all ” and, thus, subject the witness to punishment for contempt. (People ex rel. Valenti v. McCloskey, 6 N Y2d 390, 398; Matter of Finkel v. McCook, 247 App. Div. 57, affd. 271 N. Y. 636.) An illustration of such a case is where the witness persists in giving “ ‘ don’t remember ’ answers ” to questions which he is obviously in a position to answer unequivocally. (People ex rel. Cirillo v. Warden, 11 N Y 2d 51, 56.) It is equally well settled that “ if the witness directly responds with unequivocal answers which are clear enough to subject him to a perjury indictment,” then, even though it may be urged that the answers are “ incredible,” “ the sanction is by prosecution for perjury or the crime of contempt, and not by summary contempt.” (People ex rel. Valenti v. McCloskey, 6 N Y 2d 390, 403, 404, supra, affg. 8 A D 2d 74, 82; emphasis added.) Indeed, within the protection against summary contempt are answers which, while highly improbable, yet are still within the area of possible truthfulness (see Matter of Steingut v. Imrie, 270 App. Div. 34).
Had respondent, on her initial appearance before the Grand Jury, instead of refusing to answer, given the same answers as she gave on her two subsequent appearances, it is indisputable that, upon the authorities already cited herein, even if the answers were grossly evasive, the District Attorney, to commence proceedings for the punishment of a contempt, would first be required to comply with the statutory requisites of notice and hearing. (Judiciary Law, § 751.) This is for the reason that the answers thus given by respondent before the Grand Jury could in no sense be regarded as acts committed in the immediate “ view and presence of the court ” permitting invocation of the discretionary summary procedure authorized by statute (Judiciary Law, § 751). (See Matter of Douglas v. Adel, 269 N. Y. 144, 147; Matter of Spector v. Allen, 281 N. Y. 251, 256.) Thus, in this connection, it is specifically provided for by statute, that “the party charged must be notified of the accusation, and have a reasonable time to make a defense” *990 (Judiciary Law, § 751). Further, the notice thus provided for must be such that the accused is “ fully apprised of the nature of the charge”. (See Matter of Spector v. Allen, 281 N. Y. 251, 257, supra.)
Beyond this, and quite apart from the statutory and case-law requirements already stated, the United States Supreme Court has held that procedural due process demands that one charged with contempt, not involving acts committed before the court, must be accorded certain basic rights in regard to notice, a hearing, and opportunity to defend. Included are the rights to “be advised of the charges against him, [to] have a reasonable opportunity to meet them by way of defense or explanation, [to] have the right to be represented by counsel, and [to] have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.” (Matter of Oliver, 333 U. S. 257, 275; Matter of Green, 369 U. S. 689, 691-692; see Ungar v. Sarafite, 375 U. S. 809.)
The procedure here followed by the District Attorney clearly does not afford respondent this basic notice and opportunity to defend. Not only has the District Attorney failed to apprise respondent of the specific respects in which he claims her answers before the Grand Jury to have been evasive, equivocal and incredible, but he has opposed an application to furnish her with a transcript of the actual questions and answers.
Concerning all of this, the District Attorney urges simply that the respondent is not entitled to any further notice or opportunity to defend for the reason that the only question before the court is whether the 30-day sentence originally imposed on respondent for refusal to answer in the presence of the court should now be executed because of what he claims to be palpable lack of good faith shown by her in the light of the answers later given. Whatever merit inheres in this claim, the fact remains that no matter how the problem is approached, what the District Attorney is, in essence, seeking is the punishment of respondent for acts since committed by her which, in fact, were not committed in the court’s immediate view and presence. To this extent, at the very least, the District Attorney seeks to revive the contempt which respondent sought to purge herself of by ultimately testifying. Once the respondent answered, the original contempt was superseded by new conduct on respondent’s part which still requires independent evaluation as a basis for the infliction of punishment. To impose punishment on her now for respondent’s alleged failure to answer in good faith, without notice and opportunity to be heard in defense of such conduct, would therefore constitute a denial of *991 the protection afforded by statute and procedural due process. The proposal of the District Attorney, if acted upon, would operate by indirection to vitiate basic constitutional and statutory safeguards provided for the protection of witnesses. The court is, accordingly, constrained to stay its hand from a procedure inaugurating such drastic consequences, and in doing so observes that there is no precedent which has been offered in support of granting the relief sought herein.
The sentence having heretofore been imposed on respondent for a categorical refusal — in the view and presence of the court — to answer, and respondent having thereafter answered the questions put to her before the Grand Jury, the District Attorney’s application to direct the execution of the sentence is denied, and the execution of the sentence is suspended.
The disposition, now made, is obviously without prejudice to such other and further proceedings as the District Attorney may be advised to take in accordance with the applicable requirements of law. Compare the procedure followed in Matter of Second Additional Grand Jury v. Cirillo (16 A D 2d 605, 606, affd. 12 N Y 2d 206). Respondent’s application for a transcript of her testimony is denied as academic.

 It is noteworthy to observe that the respondent’s initial refusal, because of a possible exposure to criminal prosecution in the Federal courts, cannot be characterized as completely without any basis in law for, at the time, the United States Supreme Court had granted certiorari in two eases (Malloy v. Hogan, 150 Conn. 220, cert, granted 378 U. S. 1; Murphy v. Waterfront Comm., 39 N. J. 436, cert, granted 375 U. S. 812). Each application involved a reconsideration of the rationale of Knapp and both appeals were argued on March 5, 1964 and remain undetermined as of this date.