In the Matter of the SOCIAL SERVICE EMPLOYEES UNION, Petitioner, v. IRVING H. SAYPOL, as Justice of the Supreme Court of the State of New York, et al., Respondents. (And 20 Other Proceedings.)

First Department, April 15, 1965.

· *Ralph P. Katz* of counsel (*Ernest Fleischman* and *Emanuel Reichart* with him on the brief; *Delson & Gordon,* attorneys), for petitioners.

*Mortimer Sattler* of counsel (*Samuel A. Hirshowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondents.

*Per Curiam.* These proceedings, brought by two unions and their officers against a Justice of the Supreme Court pursuant to statute (Judiciary Law, § 752; CPLR, art. 78), seek the annulment of orders adjudging petitioners " guilty of a criminal contempt of Court committed in the immediate view and presence of the Court." The orders are the outgrowth of an action

instituted on December 30, 1964 by the City of New York against the petitioners in which the city sought to enjoin them from participating in a strike against the Department of Welfare in alleged violation of section 108 of the Civil Service Law. Upon motion, brought on by an order to show cause dated December 30, 1964 containing an interim restraint, a temporary injunction was granted on January 7, 1965. Among other provisions, it enjoined petitioners from "carrying on, continuing or lending support or assistance of any nature to any strike or work stoppage against plaintiff"; and it directed that each individual petitioner, in his capacity as a union officer, "forthwith instruct" all members of his union "to not engage or participate in any strike against the plaintiff."

On January 19 a hearing was held before respondent upon a motion by the city to adjudge petitioners in civil contempt for violation of the January 7 order. The hearing was adjourned to the morning of January 20 at which time, as instructed by respondent, their attorneys produced the individual petitioners before him. The directory provisions of the January 7 order were read to them, and respondent then gave them orally the following further directions:

"I direct each of you now, individually, forthwith, to return to your employments in the Department of Welfare of the City of New York.

"I direct each of you in your representative capacities, as officers or executives, as you were named, of each of those unions, forthwith to send word to the membership of your unions by telegram, by messenger, by any available or appropriate means, and advise your membership that the Court has directed, through you, that each of them forthwith return to his or her employment.

"I direct each of you to return here to this courtroom at 2:30 P.M. this afternoon to report to the Court regarding your obedience of the Court's directions."

At the afternoon session, the individual petitioners having returned as directed, respondent asked them whether they had obeyed his other directions. Receiving negative answers, he summarily adjudged them and their unions in criminal contempt. The city's motion to hold petitioners in civil contempt apparently remains pending.

"A criminal contempt in the 'immediate view and presence' of the court may be punished summarily if the acts constituting such contempt are seen or heard by the presiding judge so that he can assert of his own knowledge the facts constituting the contempt in the mandate of commitment" (*Matter of Douglas v. Adel*, 269 N. Y. 144, 146-147). The orders adjudging petition-

ers in contempt do not recite any "court-disturbing misconduct" (*Matter of Oliver,* 333 U. S. 257, 275; see Judiciary Law, § 750, subd. A, par. 1). The acts they rely on as constituting the contempt consist of disobeying the interim restraint in the December 30, 1964 order to show cause, the provisions of the January 7, 1965 injunctive order, and the court's above-quoted oral directions. As is evident from respondent's requirement that petitioners return to the courtroom and report regarding their obedience, any acts of disobedience did not occur in the court's "immediate view and presence" (cf. *Brown* v. *United States,* 359 U. S. 41, 51). We need not consider the propriety of demanding such reports (cf. *Michaelson* v. *United States,* 266 U. S. 42, 66), since in any event knowledge acquired from them would not justify summary disposition (*Cooke* v. *United States,* 267 U. S. 517, 538; *Matter of Oliver, supra,* p. 275). "To protect the liberty of the individual from possible abuse of power, punishment for contempt is hedged about with restrictions and subject to regulations imposed by the Legislature" (*Matter of Spector* v. *Allen,* 281 N. Y. 251, 260).

In view of the foregoing, petitioners' other contentions, among them that oral directions of the nature here involved may not found a contempt adjudication, are not reached.

The petitions should be granted and the adjudications of contempt annulled, without costs, and without prejudice to the pending civil contempt proceedings or to such other contempt proceedings, civil or criminal, as the city may be advised to bring.

BOTEIN, P. J., RABIN, VALENTE, EAGER and BASTOW, JJ., concur.

Petitions granted and the adjudications of contempt annulled, without costs, and without disbursements, and without prejudice to the pending civil contempt proceedings or to such other contempt proceedings, civil or criminal, as the city may be advised to bring. Settle order on notice.